IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARY ANN PARKER | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 2:21-cv-00374-JHE |
| | ) | |
| UH33-OU23 LTD, | ) | |
|     Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF BASED ON LACK OF STANDING

Defendant UH33-OU23 LTD , moves to dismiss Plaintiff's claim for injunctive relief for lack of standing.

### Background

1. The case *sub judice* is one of several filed by Plaintiff alleging violations of ADA, Title III. In just the last few years, Plaintiff has filed nearly 40 lawsuits. There are currently a dozen pending against Midfield & Fairfield Alabama businesses. In the past, Plaintiff has filed a flurry of suits against businesses in the Oxford/ Anniston area. *See* Ex. A for list of case numbers.

2. Plaintiff alleges she is a "tester" and "advocate for the disabled"[1] clearly seeking to bring her claim under the troublesome holding regarding "testers" in *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013). Plaintiff's pattern of litigation, including monetary settlements in exchange for the termination of her "advocacy" pursuits, makes her very similar to the *Houston* plaintiff, which the dissent identified as "the volunteer point man for a litigation combat patrol." *Id*. at 1341.

3. Unlike the *Houston* plaintiff, however, Plaintiff Parker does not allege sufficient facts to support standing for injunctive relief.

---

[1] Comp. ¶ 4 & 10.

4. Plaintiff alleges she is a disabled person as contemplated by the ADA. She specifically claims that she has a physical impairment which impacts her ability to walk and she uses a wheelchair or wheeled walker for mobility. Comp. ¶ 3.

5. Plaintiff asserts that Defendant's property located at 7155 Aaron Aronov Dr., Fairfield, Alabama ("the Subject Property"), has various non-complying conditions under the ADA including complaints related to the accessibility of parking, the entrance to the store, and maintenance practices. Comp. ¶ 22.

6. Plaintiff is a resident of "rural Clay County" and lives nearly 100 miles away from the Subject Property. Comp. ¶ 8 and see Doc. 3, Motion to Proceed In Forma Pauperis, p. 12. Plaintiff's address is 792 Co. Rd. 71, Ashland, Alabama.

7. The Subject Property is a TitleMax title loan company. Comp. ¶ 7.

8. Plaintiff claims that in February 2021, she attempted to but was deterred from patronizing and/ or gaining equal access as a disabled patron, to the TitleMax company." Comp. ¶ 6.

9. Plaintiff further alleges she "intends on revisiting the Subject Property within six months of the filing of this Complaint." Comp. ¶10. Plaintiff claims the purpose of her alleged future visits will be "to determine if the Subject Property is made accessible, and to maintain standing for this lawsuit." Comp. ¶ 10.

10. Being a resident of Clay County, nearly 100 miles away from the Subject Property, Plaintiff is not someone who in the normal course of her daily activities is going to be visiting the TitleMax store in Fairfield, Alabama. Notably, Plaintiff's residence is <u>over</u> 100 miles away if taking the route through Oxford, Alabama on Highway 78.

11. The image below shows the potential routes between Plaintiff's residence and the Subject Property. (The image was created by Google Maps using Plaintiff's address and the address of the Subject Property.) On the route going through the Oxford/ Anniston area, the trip to the Subject Property is 108 miles-- 216 miles round trip. Plaintiff has previously represented to the court that she "frequently" travels through the Anniston and Oxford

253481323v.1

area.[2]



12. Plaintiff alleges that she visits "the Birmingham area" to see her treating physicians and family. Comp. ¶ 8. She does not allege, however, that her treating physicians or family members are located in Fairfield or that her visits require her to regularly travel to Fairfield and specifically past the Subject Property. *Id.*

---

[2] Plaintiff has also represented to the court that she travels to the Anniston and Oxford areas "numerous times each month" and claims that she intends to visit various Anniston and Oxford businesses "on a regular basis each month." (For a few examples, see the complaints in the following cases: *Parker v. Musa Properties, LLC,* Case 1:19-cv-00898-CLM [Comp. ¶ 13]; *Parker v. Williamson Oil CO, Inc.*, Case 1:19-cv-00896-ACA [Comp. ¶ 13]; *Parker v. CBC 9, LLC,* Case 1:19-cv-00895-KOB [Comp. ¶ 13]; *Parker v. Classic Home Furnishings, LLC*, Case 1:18-cv-01735-ACA [Comp. ¶ 5]; *Parker v. Michael A. Cheatwood, et al.,* Case 2:18-cv-00244-AKK [Comp. ¶ 5]; *Parker v. Los Mexicanos #2, Inc.*, Case 1:17-cv-00305-VEH [Comp. ¶ 22]; *Parker v. Myra Davenport Family Limited Partnership*, Case 1:17-cv-00304-VEH [Comp. ¶ 22]; *Parker v. Lighting Showroom Incorporated,* Case 1:17-cv-00353-VEH [Comp. ¶ 22]; *Parker v. Retail Development of Oxford, L.L.C.*, Case 1:17-cv-00354-KOB [Comp. ¶ 22]; *Parker v. Oxford Shell, LLC*, Case 1:17-cv-00589-VEH [Comp. ¶ 22]) Accepting these representations as true, it follows that Plaintiff would likely be using the route through Oxford if she was traveling to the Birmingham area. Thus, the distance to the Subject Property is over 100 miles away.

3

13. The Anniston/ Oxford area, where Plaintiff claims she visits numerous times a month has numerous title loan businesses, including two TitleMax locations. Plaintiff does not provide any information on her specific intent to travel over 100 miles to become a regular patron of the TitleMax in Fairfield, Alabama other than to maintain this lawsuit.

14. Even if the Plaintiff lived near Fairfield, rather than 100 miles away, it is not likely that she would be a "regular patron" of the TitleMax store at the Subject Property. **Plaintiff has specifically represented to this Count in a sworn statement that she does not expect income from the types of loans provided by TitleMax.** *See* **Doc. 3-1.**

15. Plaintiff has submitted an affidavit to this Court detailing her monthly income and how she spends money each month. *Id*. The affidavit was submitted to support her Motion to Proceed In Forma Pauperis. Doc. 3.

16. Plaintiff claims her average monthly income is $1,280.00 and her average monthly expenses are $1,545.00. Doc. 3-1. Thus, her estimated monthly expenses are $265 *over* her estimated income. Plaintiff states she has only $20 in her checking account and $3800 in cash. *Id*.

17. In Section 8 of her "Application to Proceed Without Prepaying Fees or Costs", Plaintiff identifies her monthly expenses as follows: utilities ($337); food ($200); clothing ($10); laundry ($5); medical ($111); insurance ($262); transportation ($100)[3]; co-pays and prescriptions ($90); and credit card installment payments to JC Penny, WalMart & Sam's Club ($430). *Id.*

18. **Plaintiff was specifically asked "Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?" and Plaintiff answered "No." Doc. 3-1, p.12.**

---

[3] This category encompasses car upkeep and fuel. Given the price of gas, this portion of Plaintiff's affidavit also demonstrates that Plaintiff does not expect to be making regular trips from her home in Ashland, Alabama all the way to the Subject Property, which is a nearly 200 mile round trip—and *over* 200 miles when driving through the Oxford/ Anniston area.

4

253481323v.1

19. Accepting Plaintiff's sworn statement to this Court and considering the fact that Plaintiff lives over 100 miles from the Subject Property, it is evident that Plaintiff lacks sufficient facts to establish a likelihood of future injury as required for injunctive relief.

## **Argument**

Plaintiff's Claim for Injunctive Relief Should be Dismissed Because She Lacks Standing.

In the context of the ADA, when seeking prospective injunctive relief, a plaintiff must plausibly show that she will suffer disability discrimination by the defendant in the future. *Kennedy v. Solano*, No. 18-10250, 2018 WL 2411761 at *1 (11th Cir. May 29, 2018). To make this showing, Plaintiff must allege "a real and immediate – as opposed to conjectural or hypothetical - threat of future injury." *Shotz v. Cates*, 256 F.3d 1077 at 1081. In *Houston v. Marod Supermakets, Inc.*, the 11th Circuit specifically held that being a "tester" of ADA compliance is not enough to show standing for injunctive relief. *Houston* at 1334. Plaintiff "must show a real and immediate threat of future injury." *Id*. "[I]n a factual challenge to subject matter jurisdiction, a district court can consider extrinsic evidence such as deposition testimony and affidavits. In so doing, a district court is free to weigh the facts and is not constrained to view them in the light most favorable to the plaintiff." *Id*. at 1336, *quoting Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). In considering this motion to dismiss, the court is also not bound "to accept as true a legal conclusion couched as a factual allegation." *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986).[4]

To establish standing for injunctive relief in *Houston*, the plaintiff presented evidence of past trips to the subject store through purchase receipts. *Houston* at 1336. The plaintiff lived 30.5 miles from the subject business. *Id*. The Court found that this distance did not negatively impact standing because the plaintiff provided testimony that he regularly traveled past the

---

[4]Plaintiff's allegations that she has an "intent to return" and "avail herself of the goods and services of Defendant's store" but is "deterred" from doing so are legal conclusions couched as factual allegations. At its core, the Complaint consists of formulaic recitations that are due to be ignored as legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 681, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

5

supermarket to his lawyers' office, which he regularly visited. *Id*. The *Houston* court noted that "different facts may demand a different conclusion. Plaintiff Houston lives in the next county. He does not live hundreds of miles away from the store with no particular reason to return." *Id*.

In the case *sub judice*, the facts do demand a different conclusion. Plaintiff Parker lives 100 miles away from the Subject Property. Unlike, the *Houston* plaintiff, Plaintiff Parker has not presented any evidence of past patronage. Additionally, the *Houston* plaintiff showed "a particular reason to return" to the subject store. Plaintiff Parker, however, has no particular reason to return to the Subject Property other than her confessed purpose to "maintain standing." The undisputed facts presented in her sworn affidavit demonstrate she has no expectation of obtaining the types of title loan services provided by the business at the Subject Property. Doc. 3-1. Further, there is no explanation for why Plaintiff would travel all the way to Fairfield, Alabama to obtain such a loan versus obtaining those services from one of the lenders in the Anniston/ Oxford area, which is substantially closer to her residence and is an area that Plaintiff claims she visits "numerous times per month." *See* FN.2.

Plaintiff's intent to return to the Subject Property for "advocacy purposes" and "to determine if and when the Subject Property is made accessible"[5] is not sufficient for standing. "[A] desire to return to test for ADA compliance has not been deemed sufficient, without more, to support standing." *Longhini v. J.U.T.A., Inc.* 2018 U.S. Dist. LEXIS 40156, 2018 WL 1305909, at *4. (M.D. Fla. Mar. 13, 2018). Further, Plaintiff's general allegation that she often travels to "the Birmingham area" is not sufficient to establish "frequency" and likelihood of future injury. *Michalares-Owens v. Me, Myself, and I, Inc.,* 2020 U.S. Dist. LEXIS 87334, 2020 WL 2543089, at *5-*7. (M.D. Fla. May. 19, 2020). Additionally, Plaintiff's allegation that she intends on revisiting the Subject Property "within six months of the filing of this Complaint"[6] is not "a definitive plan." *Michalares-Owens* at *5.

---

[5] Comp. ¶ 10.

[6] Comp. ¶ 10.

6

In *Michalares-Owens,* the plaintiff alleged "that she is a consumer who frequents businesses in the Tampa Bay Area and her attorneys, friends, and medical care providers are located in the Tampa Bay area which she frequents often and on a constant basis." *Id*. at *5. The plaintiff also alleged that "she will return to the [subject business] within 90 days of service of process." *Id*. The court held that these allegations were "far from a definite plan" and "[t]aking the totality of circumstances, Plaintiff has failed to meet her burden to adequately allege facts that indicate a future injury required for injunctive relief. While some factors tilt towards the Plaintiffs, they are outweighed by a lack of an intent to return and no history of past patronage." *Id*. at *7.

Similarly, Plaintiff Parker's generalized intent to return to the Subject Property is insufficient to create standing in this case. In 2018, the Eleventh Circuit affirmed the lower court's dismissal of a Title III ADA lawsuit for lack of standing where the plaintiff expressed similarly vague and generalized intent of returning to the place of alleged injury. *See Kennedy v. Solano, supra.* There the Court specifically rejected the plaintiff's contention that such generalized intent established standing, holding that "conclusory allegations" of intent to return to the defendant's restaurant and frequent travel in the vicinity of the defendant's restaurant, without a concrete plan regarding the alleged return, did not suffice to show a plausible threat of injury at defendant's restaurant. *Id*. at *2.

The Eleventh Circuit addressed a similar situation in *Kennedy v. Beachside Commercial Properties, LLC,* 732 Fed. Appx. 817 (11th Cir. 2018). Plaintiff Kennedy (the same plaintiff as in *Solano* above) was wheelchair bound and sued Beachside Commercial Properties, LLC for alleged noncompliance with the ADA. *Id*. at 818.The lower court dismissed the case for lack of standing and the 11th Circuit upheld because the plaintiff's sole visit to defendant's store and vague plans to return someday did not show she would be injured by Beachside's alleged noncompliance. *Id*. at 821-22. The Eleventh Circuit found that Plaintiff Kennedy, who lived 175 miles away in Broward County, needed to do more than show that she was injured in the past. Kennedy alleged she had visited the general area about 10 times in recent months and 50 times over the course of her lifetime and had generalized plans to visit Cocoa Beach

7

253481323v.1

sometime in the future. The Court simply determined that was not enough to give her standing. In citing *Shotz v. Cates*, 256 F.3rd 1077, 1081 (11th Cir. 2001), the Court re-asserted the premise that the plaintiff must show "a real and immediate – as opposed to a merely conjectural hypothetical – threat of future injury." *Id*. The Court re-affirmed that "our standing inquiry in the ADA context has focused on the frequency of the plaintiff's visits to the defendant's business and the definitiveness of the plaintiff's plan to return." *Kennedy v. Beachside* at 820, citing *Silva v. Baptist Health S.Fla., Inc.,* 856 F.3d 824, 832 (11th Cir. 2017). The Court in *Kennedy* concluded that plaintiff's singular documented visit to Beachside's store did not weigh in her favor, and she has failed to demonstrate a "real and immediate threat of future injury." *Id.* at 821.

In the case *sub judice,* there is even less to show standing than in *Kennedy v. Beachside*. Plaintiff Parker does not possess a singular documented visit to the Subject Property. Like Kennedy, Plaintiff Parker poses a merely conjectural hypothetical threat of future injury. When looking at the frequency of Plaintiff's visits and definitiveness of her plan to return, as directed by the 11th Circuit, it is evident that Plaintiff Parker does not have standing in this case.

There exists direct evidence <u>from Plaintiff Parker</u> demonstrating there is no real and immediate threat of future injury because Plaintiff does not actually intend on making legitimate future visits to the subject property. Her sworn statement to this Court affirms that she does not "expect any major changes to [her] monthly income or expense or in [her] assets or liabilities during the next 12 months." Doc. 3-1, p. 12. Yet, in an attempt to maintain standing she alleges that she intends to revisit the Subject Property "to be a regular patron." Comp. ¶ 10. The Subject Property isn't a restaurant, grocery store, or gas station—the types of businesses that one regularly frequents and the type Plaintiff Parker regularly sues. The Subject Property is a title loan company. It offers one service—making loans based on title ownership. Just as one who intends to visit a restaurant expects to consume food or drink, one who intends on becoming a "regular patron" of a title loan business <u>expects</u> major changes to their monthly income, assets and liabilities. Inherently, the services of a title loan store do just that—change your monthly income, assets and liabilities.

Additionally, Plaintiff's sworn statement establishes that she does not intend on making regular trips out to the Subject Property, which is 100 miles away from her residence. Plaintiff represents to this Court that she allocates $100 per month to transportation. This includes gas for her car and upkeep for her vehicle. Plaintiff obviously knows the distance between her residence and the Subject Property and knows the cost of fuel. If she truly intended on becoming a "regular patron" and making future visits to the Fairfield TitleMax, she would expect to be spending much more than $100 a month on transportation. This amount for gas is even harder to reconcile in light of Plaintiff's multiple claims to the court that she frequently travels to Anniston to shop, visit businesses, doctors and family "numerous times as month." Anniston is about 40 miles from Plaintiff's residence. To the extent she is making these "numerous" trips, her transportation funds are even more limited and would not allow for the much longer 200+ mile round trip to Fairfield and back.

In sum, Plaintiff lacks standing to bring the present lawsuit because she is unable to "plausibly show that she will suffer disability discrimination by the Defendant in the future." *Kennedy v. Solano,* at *1. There is direct evidence refuting the likelihood of future injury that comes from Plaintiff's sworn declaration to this Court made under penalty of perjury. Doc. 3-1. Specifically, her claim that she intends to "revisit to be a regular patron" is contradicted by the undisputed facts that (1) she lives 100 miles from the Subject Property; (2) she has allocated very limited funds for gas/ transportation that does not support a real intent to make regular trips to the Subject Property; and (3) according to Plaintiff, she has not and does not expect to obtain income from lending services like those provided by the business at the Subject Property.

## Conclusion

For these reasons, Defendant moves for the dismissal of Plaintiff's claim for injunctive relief based on lack of standing.

Respectfully submitted, this the 3rd day of May, 2021.

                /s/  Rebecca A. Young
                REBECCA A. YOUNG (asb-9967-c49c)

**OF COUNSEL:**
WILSON ELSER MOSKOWITZ
 EDELMAN & DICKER, LLP
1500 Urban Center Drive Suite 450
Vestavia Hills, AL 35242
(205)709-8990 Main
(205)709-8979 Facsimile
rebecca.young@wilsonelser.com

### CERTIFICATE OF SERVICE

    I certify that on this the 3rd day of May, 2021, the foregoing has been electronically filed utilizing the Court's CM/ECF system, which will send electronic notification to the following counsel of record:

John Allen Fulmer, III
Fulmer Law Firm, P.C.
2330 Highland Ave. S
Birmingham, AL 35205
(205) 703-4892
jaf@jafulmerlaw.com

                /s/ Rebecca A. Young
                OF COUNSEL

253481323v.1

## EXHIBIT A- Plaintiff Parker's Other Recently Filed ADA Claims

| | |
|---|---|
| Parker V. Pro Parts Home & Auto Supply | Case 2:21-cv-00440-AMM |
| Parker V. ALI Corporation | Case 2:21-cv-00417-JHE |
| Parker V. S & Y, LLC | Case 2:21-cv-00416-AMM |
| Parker V. Aalpha, LLC | Case 2:21-cv-00437-AKK |
| Parker V. Family Dollar Stores of Alabama, LLC | Case 2:21-cv-00436-AMM |
| Parker V. WHP, LLC | Case 2:21-cv-00438-ACA |
| Parker V. EPAC Investments LLC | Case 2:21-cv-00488-MHH |
| Parker V. FQSR LLC | Case 2:21-cv-00489-JHE |
| Parker V. Store Master Funding X, LLC | Case 2:21-cv-00490-RDP |
| Parker V. AutoZone, Inc. | Case 2:21-cv-00292- GMB |
| Parker V. Jack Wilson Family Properties, LLC | Case 1:19-cv-00897-CLM |
| Parker V. Musa Properties, LLC | Case 1:19-cv-00898-CLM |
| Parker V. Williamson Oil CO, Inc. | Case 1:19-cv-00896-ACA |
| Parker V. CBC 9, LLC | Case 1:19-cv-00895-KOB |
| Parker V. Classic Home Furnishings, LLC | Case 1:18-cv-01735-ACA |
| Parker V. Michael A. Cheatwood and Evelyn T. Cheatwood | Case 2:18-cv-00244-AKK |
| Parker V. Los Mexicanos #2, Inc. | Case 1:17-cv-00305-VEH |
| Parker V. Myra Davenport Family Limited Partnership | Case 1:17-cv-00304-VEH |
| Parker V. Lighting Showroom Incorporated | Case 1:17-cv-00353-VEH |
| Parker V. Retail Development of Oxford, L.L.C. | Case 1:17-cv-00354-KOB |
| Parker V. Oxford Shell, LLC | Case 1:17-cv-00589-VEH |
| Parker V. S.C.N., LLC | Case 2:17-cv-00588-RDP |
| Parker V. Mapco Express, Inc. | Case 3:17-cv-00330-TFM |
| Parker V. Darryl Saucier | Case 3:17-cv-00329-TFM |
| Parker V. D & B Foods, L.L.C. | Case 1:17-cv-01426-VEH |
| Parker V. Betty's Barbecue, Inc. | Case 1:17-cv-01521-SGC |
| Parker V. Empire Property Investments, LLC | Case 2:17-cv-01547-SGC |
| Parker V. Moiz Fouladbakhsh | Case 2:17-cv-01548-TMP |
| Parker V. Fred's Stores of Tennessee, Inc. | Case 1:17-cv-01887-JEO |
| Parker V. Supermart, L.L.C. | Case 1:17-cv-01930-JEO |
| Parker V. Jay Mahraj LLC | Case 1:16-cv-01148-SGC |
| Parker V. Jean Ribe | Case 2:16-cv-01290-MHH |
| Parker V. El Cazador Foods, LLC | Case 2:16-cv-01884-JHE |
| Parker V. Reb Oil of Alabama, LLC | Case 1:16-cv-02026-VEH |
| Parker V. TK Enterprise L.L.C. | Case 1:16-cv-02028-SGC |

253481323v.1